**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ERIC ERNST,<br><br>Plaintiff,<br><br>v.<br><br>UNION COUNTY CONSERVATION DISTRICT,<br><br>Defendant. | No. 4:21-CV-01702<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**JUNE 10, 2022**

In March 2021, Plaintiff Eric Ernst, a Union County Conservation District employee for fifteen years, reported that his agency was improperly processing certain environmental permits. When Ernst's supervisor learned of these reports, he became upset and irritated, and four weeks later, Ernst was fired.

Ernst now brings suit against his former employer, alleging discrimination and violations of the Pennsylvania Whistleblower Law. The Conservation District moves to dismiss the claim under the Whistleblower Law, asserting that Ernst failed to allege (a) he reported "wrongdoing," as defined in the statute, and (b) a causal link between his reports of wrongdoing and his termination. But that's incorrect. For the reasons provided below, the Conservation District's motion to dismiss is denied.

## I. BACKGROUND

Ernst began working for the Conservation District in December 1994, and he maintained his employment without incident for nearly fifteen years.[1] But in January 2019, Union County hired Eric Nyerges as Conservation District Manager.[2] In this capacity, Nyerges served as Ernst's direct supervisor, and the relationship soured quickly.[3]

Things came to a head in March 2021.[4] Early that month, Ernst met separately with a member of the Conservation District's Board and a Union County commissioner and told them that Nyerges was not properly processing National Pollutant Discharge Elimination System ("NPDES") permits—authorizations needed when discharging any pollutants into waters of the United States.[5] According to Ernst, a former Conservation District employee processed the permits incorrectly, and certain permits were then approved and issued without Nyerges's signature, as was required.[6]

On March 11, 2021, Nyerges and Ernst met to discuss Ernst's workload, but the conversation quickly turned to the improperly processed permits.[7] Nyerges instructed Ernst to fix the permits and expressed his desire to retaliate against the

---

1 Doc. 1 ¶¶ 10–11.
2 *Id.* ¶ 12.
3 *Id.* ¶¶ 12–18.
4 *Id.* ¶ 19.
5 *Id.* ¶¶ 26–28; *see also* Doc. 11 at 7.
6 Doc. 1 ¶¶ 20, 22.
7 *Id.* ¶¶ 19–20.

employee who processed the permits by reporting him to the Pennsylvania Department of Environmental Protection.[8] Nyerges then blamed Ernst for the problem, but Ernst responded that Nyerges was ultimately responsible because he signed the permits.[9]

According to Ernst, Nyerges was "upset and irritated" at him for reporting the permit processing issues and retaliated by subjecting Ernst to "pre-textual write ups and hostile treatment."[10] In particular, on March 30, 2021, Nyerges demanded that Ernst meet with him privately.[11] Ernst refused.[12] Nyerges then followed Ernst around the office, continuing to demand a meeting.[13] Ultimately, Nyerges blocked Ernst's path so he could not leave, and, after denying multiple requests to move, told Ernst, "Go ahead and push me and see what happens."[14] Ernst responded in kind, telling Nyerges, "You push me and see what happens."[15] Nyerges then claimed Ernst threatened him and told Ernst he was calling the police.[16] Several days later, the Conservation District fired Ernst, purportedly for insubordination.[17]

On July 14, 2021, Ernst filed charges of discrimination and retaliation with the Pennsylvania Human Rights Commission and the Equal Employment

---

8 *Id.* ¶¶ 22–23.
9 *Id.* ¶¶ 24–25.
10 *Id.* ¶¶ 28, 52.
11 *Id.* ¶ 53.
12 *Id.*
13 *Id.* ¶ 54.
14 *Id.* ¶¶ 54–55.
15 *Id.* ¶ 56.
16 *Id.* ¶ 57.
17 *Id.* ¶ 58.

Opportunity Commission.[18] Nearly three months later, on October 5, 2021, Ernst initiated the instant suit, alleging violations of the Age Discrimination and Employment Act (Count I), Pennsylvania Human Relations Act (Count II), and Pennsylvania Whistleblower Law (Count III).[19] The Conservation District then moved to dismiss Count III.[20] That motion has been fully briefed and is now ripe for disposition.[21]

## II. LAW

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[22] and *Ashcroft v. Iqbal*,[23] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[24] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim";

---

18 *Id*. ¶ 39.
19 *Id*. ¶¶ 29–40 (Count I – ADEA), 41–43 (Count II – PHRA), 44–62 (Count III – Whistleblower Law).
20 Doc. 9.
21 Doc. 10; Doc. 11; Doc. 12.
22 550 U.S. 544 (2007).
23 556 U.S. 662 (2009).
24 *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

(2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[25]

## III. ANALYSIS

In its motion to dismiss, the Conservation District challenges only Count III: violation of the Whistleblower Law. Courts analyze claims under the Whistleblower Law using the three-step burden shifting framework promulgated by the Supreme Court of the United States in *McDonnell Douglas Corp. v. Green*.[26] The plaintiff must first establish a *prima facie* case, which requires proving, "by a preponderance of the evidence, that, prior to the alleged acts of retaliation, he had made a good faith report of wrongdoing to appropriate authorities."[27] Additionally, he must "come forward with some evidence of a connection between the report of wrongdoing and the alleged retaliatory acts."[28] If the plaintiff makes this showing, "the burden shifts to the employer to establish that there was a legitimate reason for the adverse action."[29] And "[o]nce the

---

25 *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

26 411 U.S. 792 (1973); *see also McCowan v. City of Philadelphia*, 2022 WL 742687, at *38 (E.D. Pa. Mar. 10, 2022) ("The *McDonnell Douglas* burden shifting framework applies to retaliation claims brought pursuant to [the Whistleblower Law].") (citing *Anderson v. Board of School Directors of Millcreek Township School District*, 574 F. App'x 169, 173 & n.4 (3d Cir. 2014)).

27 *O'Rourke v. Commonwealth*, 778 A.2d 1194, 1200 (Pa. 2001) (citing 43 Pa. Stat. § 1424(b)).

28 *Id*.

29 *Anderson*, 574 F. App'x at 173 n.4 (citing 43 Pa. Stat. § 1424(c)).

employer offers such evidence, the burden shifts back to the [plaintiff] to show that this reason was merely pretextual."[30]

That said, "for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion dismiss."[31] Noting that "[a] *prima facie* case is 'an evidentiary standard, not a pleading requirement,'"[32] the Third Circuit explains that "the post-*Twombly* pleading standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements."[33] Accordingly, Ernst's claim under the Whistleblower Law survives the Conservation District's motion to dismiss if it contains "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following three elements":

(1) Ernst made a good faith report of wrongdoing to appropriate authorities;

(2) the Conservation District took adverse action against him; and

(3) a causal link exists between Ernst's report of wrongdoing and the Conservation District's adverse action.[34]

Burden shifting and questions regarding legitimate, non-discriminatory rationales versus pretext are therefore reserved for summary judgment—after the parties have built a factual record.[35]

---

30 *Id*. (citing *Golaschevsky v. Dep't of Environmental Protection*, 720 A.2d 757, 760 (1998) (Negro, J., concurring)).

31 *Connelly*, 809 F.3d at 788.

32 *Id*. at 789 (quoting *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002)).

33 *Id*. (internal quotation marks and citation omitted).

34 *Id*.

35 *Id*.

Here, the Conservation District challenges elements one and three, arguing that Ernst failed to allege a report of "wrongdoing" as well as "a causal connection between the report he made and the alleged act of retaliation."[36] The Court addresses each argument in turn.

### A. Report of "Wrongdoing"

The Conservation District first argues that Ernst fails to allege that he made a "good faith report of wrongdoing" because he does not plead (a) "any state or federal statute or regulation that was violated," and (b) how the "improper processing of the NPDES permits rises to a level above a merely technical or minimal infraction."[37] In response, Ernst acknowledges he "has not identified a specific code number or statutory provision," but asserts that is not necessary to establish a claim under the Whistleblower Law.[38] According to Ernst, "he has identified the specific requirement that [the Conservation District] violated through its conduct"—namely, Nyerges's failure to properly process NPDES permits—which is sufficient to survive dismissal at this early stage in the litigation.[39] The Court agrees with Ernst.

The Whistleblower Law defines "wrongdoing" as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation,

---

36 Doc. 10 at 6–8.
37 *Id.*
38 Doc. 11 at 8–9.
39 *Id.*

of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer."[40] To meet this definition, "the violation must be one that the employer is charged to enforce for the public good or relate to the internal administration."[41] Relevant here, Pennsylvania courts instruct that "reports of vague or subjectively wrong conduct are not considered wrongdoing under the Whistleblower Law"; instead, "[t]he report must provide information that is sufficient to identify the law allegedly violated" and that law "must specifically define some prohibited conduct."[42] However, at the motion to dismiss phase, plaintiffs are "not required to cite to a specific statute, code or regulation in order to state claim under the Whistleblower Law."[43] At this early stage, the claim survives so long as "the facts alleged . . . suggest that [the] Defendants' actions were violative of a code of conduct or ethics," or other law or regulation.[44]

Here, Ernst alleges that certain NPDES permits, which "Nyerges was required to sign" prior to approval, "had not been processed correctly by a former employee," and that he informed a Conservation District board member and Union

---

40 43 Pa. Stat. § 1422.

41 *Sukenik v. Township of Elizabeth*, 131 A.3d 550, 555 (Pa. Cmmwlth. 2016).

42 *Id*.

43 *Beaumont v. Allegheny County Emergency Services*, 2021 WL 1948357, at *9 (W.D. Pa. Mar. 9, 2021), *report and recommendation adopted*, 2021 WL 1946659 (W.D. Pa. May 14, 2021).

44 *Bielewicz v. Penn-Trafford School District*, 2011 WL 1486017, at *5 (W.D. Pa. Feb. 9, 2011) (internal quotation marks omitted), *report and recommendation adopted*, 2011 WL 1399839 (W.D. Pa. Apr. 13, 2011).

County commissioner that "Nyerges was not properly processing and completing the NPDES permits."[45] The Complaint contains no detail on which Federal or State statute or regulation Nyerges and the Conservation District purportedly violated by improperly processing and approving the NPDES permits.[46] But in his Opposition, Ernst asserts that the Pennsylvania Department of Environmental Protection "has the statutory authority to 'take appropriate action on all permit applications,'"[47] and that consistent with 25 Pa. Code §§ 102.31 and 102.41, the Department delegated the authority over NPDES permit applications in Union County to the Conservation District.[48] According to Ernst, he "raised wrongdoing within this framework."[49]

Ernst's Complaint and Opposition leave many questions unanswered. Although Ernst endeavors in his Opposition to outline the legal basis for the violations he reported, he does not identify any statutory or regulatory provision that "specifically define[s] some prohibited conduct" regarding the processing of NPDES permits.[50] Moving forward, this omission, if left unaddressed, will prove fatal.[51] But at this stage, the absence of this information does not necessitate

---

45 Doc. 1 ¶¶ 20, 22, 26–27.

46 *See id*. ¶¶ 8–62.

47 Doc. 11 at 6 (quoting 42 Pa. Stat. § 1423(a)).

48 *Id*. at 6–7.

49 *Id*. at 7.

50 *Sukenik*, 131 A.3d at 556.

51 *Id.*; *see also Allen v. City of Philadelphia*, 2019 WL 1528538, at *5–6 (Pa. Commwlth. Apr. 9, 2019) (holding that "the trial court committed an error of law by concluding that [the plaintiff's] report constitute a good faith report of waste" because at trial, the plaintiff did not "connect [the alleged wrongful conduct he reported] with some type of specific violation that

dismissal.[52] Ernst's allegations about reporting Nyerges's approval of improperly processed permits "suggest that [Nyerges's] actions were violative of a [Federal or State law or regulation]."[53] Accordingly, Ernst adequately alleges "wrongdoing" under the Whistleblower Law.

### B. Causation

The Conservation District next argues that Ernst fails to allege "a causal connection between the report he made and the alleged act of retaliation."[54] But again, the Court finds the Conservation District's arguments unavailing.

The Third Circuit instructs that "[t]o establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory

---

would satisfy the definition of 'wrongdoing'"); *Schellbach v. Colonial Intermediate Unit #20*, 2017 WL 4542372, *5 (Pa. Commwlth. Oct. 12, 2017) (affirming trial court's order granting summary judgment because the plaintiff "has not identified any statutory provision or applicable regulation that specifically prohibits the complained-of conduct," and, therefore, "the trial court properly concluded that [the plaintiff] has not alleged the 'wrongdoing' necessary to state a claim under the Whistleblower Law").

52 *Compare Beaumont*, 2021 WL 1948357 at *9 (denying a motion to dismiss a claim under the Whistleblower Law based on the plaintiff's allegation that she suffered a retaliatory firing after reporting that her coworker, a 9-1-1 operator, was "sleeping on the job" even though the plaintiff did not "cite to a specific statute, code or regulation" that this conduct allegedly violated), *with Gray v. Hafer*, 651 A.2d 221, 223–24 (Pa. Commwlth. 1994) (dismissing without prejudice plaintiff's claim under the Whistleblower Law because the plaintiff alleges only that he "filed a good-faith report . . . that identified and documented instances of wrongdoing and/or waste"; the plaintiff did not detail what the alleged "instances of wrongdoing and/or waste" were, leaving the court unable to determine whether these instances were "violation[s] of [a] statute" the purported wrongdoer was "charged to enforce for the benefit of the public" or "unrelated to [any] statutory or regulatory duties").

53 *Bielewicz*, 2011 WL 1486017 at *5.

54 Doc. 10 at 7.

action, or (2) a pattern of antagonism coupled with timing."[55] That said, causation "can be inferred" by "other evidence gleaned from the record as a whole"; plaintiffs are "not limited to timing and demonstrative proof, such as actual antagonistic conduct or animus."[56]

Here, Ernst alleges that he reported Nyerges's failure to properly process and complete the NPDES permits "[o]nly a few days before [his] March 11, 2021, meeting" with Nyerges, and then Nyerges fired him on April 8, 2021—approximately four weeks later.[57] The temporal proximity of these actions may well be insufficient, by itself, to establish causation.[58] But Ernst does not predicate his argument for causation solely on temporal proximity.[59] Indeed, as Ernst asserts, the Complaint includes a collection of additional allegations relevant to this inquiry:

---

55 *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

56 *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000); *see also Daniels v. School District of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015) (holding that "a plaintiff may rely on the temporal proximity between [the protected activity and employer's adverse action] if 'unusually suggestive,'" but "[i]n the absence of such a close temporal proximity, [courts] consider the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action").

57 Doc. 1 ¶¶ 26–28.

58 *See Williams v. Philadelphia Housing Authority Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (explaining that although "two days between the protected activity engaged in and the alleged retaliation" as well as "comments made by a supervisor suggesting retaliation ten days before termination, along with other evidence of retaliation," have been held sufficient to "support a causal connection," two months between the protected activity and adverse action are not "so close as to be unduly suggestive") (citing *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003)), *superseded by statute on other grounds as stated in Robinson v. First State Community Action Agency*, 920 F.3d 182, 187–89 & n.30 (3d Cir. 2019).

59 Doc. 11 at 11 ("Ernst has timing plus other supporting facts.").

- When Ernst informed Nyerges that the permits, which Nyerges was required to sign, were not processed properly, Nyerges blamed Ernst and the Conservation District employee who processed the permits and wanted to retaliate against the other employee by reporting him to the Department of Environmental Protection.[60]

- Nyerges was "upset and irritated" when he learned that Ernst reported the improper permit processing to a Conservation District board member and County commissioner.[61]

- Nyerges issued Ernst "pre-textual write ups and hostile treatment": On March 30, 2021, Nyerges followed Ernst around the office demanding to meet with him, and, when Ernst refused, physically blocked Ernst's path and then challenged Ernst to "push [him] and see what happens."[62]

Taken together, the relatively close temporal proximity and the additional allegations of antagonism and animus "raise a reasonable expectation that discovery will reveal evidence" of a causal link between Ernst's report of wrongdoing and termination.[63]

Separately, the Conservation District argues the Complaint and attached termination letter show that Ernst "was insubordinate with respect to [Nyerges's] requests for a meeting" and "terminated for [his] insubordination."[64] But on this, the Conservation District jumps the gun. As explained, questions regarding legitimate, non-discriminatory rationales versus pretext—that is, the *McDonnell*

---

60 Doc. 1 ¶¶ 20–25.
61 *Id.* ¶ 28.
62 *Id.* ¶¶ 52–56.
63 *Connelly*, 809 F.3d at 789; *see also Farrell*, 206 F.3d at 280–86 (holding that timing of four weeks between protected conduct and retaliation coupled with evidence of animus and inconsistencies in the employer's stated rationale for the plaintiff's termination was "sufficient to establish [a] causal link").
64 Doc. 10 at 7.

*Douglas* burden shifting analysis—are reserved for summary judgment.[65] After the parties develop the factual record through discovery, the Conservation District will have the opportunity to offer a legitimate, non-discriminatory justification for firing Ernst. But that's not the question here. At the pleadings stage, Ernst needs only to allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements."[66] Ernst has met this burden.

## IV. CONCLUSION

Everything considered, the pleading requirements for claims under the Whistleblower Law are relatively modest. Plaintiffs need only plead factual allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a *prima facie* case. By alleging that he reported improper permit processing, which angered his supervisor and resulted in pretextual write-ups, hostile treatment, and, ultimately, his termination four weeks later, Ernst has satisfied his requirements at this early stage. The Conservation District's motion to dismiss Count III is therefore denied.

An appropriate Order follows.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
Chief United States District Judge

---

65 *Connelly*, 809 F.3d at 789.

66 *Id*. (internal quotation marks omitted).