UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC ERNST, | ) | CIVIL ACTION NO. 4:21-CV-1702 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| UNION COUNTY CONSERVATION | ) | |
| DISTRICT *et al.*, | ) | |
| Defendants | ) | |

**MEMORANDUM OPINION**
*(Order on Defendants' Motion to Dismiss Specific Sections of Plaintiff's Amended Complaint (Doc. 29))*

## I.    INTRODUCTION

Eric Ernst ("Plaintiff") filed this action against his employers, Union County and Union County Conservation District ("Defendants"), alleging violations of the Age Discrimination in Employment Act, the Pennsylvania Human Relations Act, and the Pennsylvania Whistleblower Law. Currently before the Court is Defendants' motion to dismiss specific sections of Plaintiff's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 29). The parties have consented to proceed before a United States Magistrate Judge. (Doc. 21). The Court has reviewed the motion, the briefs, and the amended complaint. For the reasons explained in this Opinion, Defendants' motion will be granted in part and denied in part.

## II.    BACKGROUND & PROCEDURAL HISTORY

On July 14, 2021, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC"), numbered 2021-00065. (Doc. 27, ¶ 10). On or around July 14, 2022, the PHRC mailed Plaintiff a right to sue letter that advised him of his right to bring this action. (Doc. 27, ¶ 11; Doc. 27-1, p. 2).

On October 5, 2021, Plaintiff Eric Ernst filed this action against Defendant Union County Conservation District ("UCCD"). (Doc. 1). The case was assigned to United States District Chief Judge Matthew W. Brann for the Middle District of Pennsylvania. On December 10, 2021, Defendant UCCD filed a motion to dismiss for failure to state a claim. (Doc. 9). On June 10, 2022, Judge Brann issued a Opinion and Order denying that motion. (Docs. 13, 14). On August 15, 2022, upon consent of Plaintiff and Defendant UCCD the case was assigned to the undersigned. (Doc. 21).

On August 12, 2022, Plaintiff filed a motion for leave to file an amended complaint. (Doc. 19). On August 23, 2022, the undersigned granted Plaintiff's motion. (Doc. 24). On August 24, 2022, Plaintiff filed his amended complaint. (Doc. 27). Plaintiff's amended complaint added Defendant Union County. On February 12, 2022, Defendant Union County consented to proceed before a United States Magistrate Judge. (Doc. 21).

Like the original complaint, Plaintiff's amended complaint asserts claims under the Age Discrimination in Employment Act, the Pennsylvania Human Relations Act, and the Pennsylvania Whistleblower Law. (Doc. 27). To his amended complaint Plaintiff attaches a copy of the PHRA right to sue letter (Doc. 27-1, p. 2) and the letter informing him of his termination (Doc. 27-2, p. 2). Plaintiff avers that at all times relevant to this case he has been at least 40 years old (Doc. 27, ¶ 3) and that he has complied with all administrative prerequisites for the commencement of this action. (Doc. 27, ¶¶ 10-12).

Plaintiff's amended complaint sets forth the following facts in detail. Plaintiff's employment with Defendants began in 1989 when he was employed in Union County's maintenance department. (Doc. 27, ¶ 14). In December 1994, Plaintiff began working for UCCD as an Erosion and Sedimentation Pollution Control Technician. (Doc. 27, ¶ 15). From December 1994 through January 2019, Plaintiff had no job-related issues with Defendants. (Doc. 27, ¶ 16). Throughout his employment, Plaintiff's job performance consistently met or exceeded Defendants' standards, he performed his job satisfactorily and had no issues with supervisors, other employees, or the public. (Doc. 27, ¶ 42). In January 2019, Eric Nyerges was hired as the Conservation District Manager and became Plaintiff's supervisor. (Doc. 27, ¶ 17).

After Mr. Nyerges was hired, he and Plaintiff began having problems. (Doc. 27, ¶ 18). For example, in February 2020 Plaintiff requested time off to attend his granddaughter's funeral. (Doc. 27, ¶ 19). Mr. Nyerges denied Plaintiff's request after asking Plaintiff if his granddaughter died as the result of a miscarriage, resulting in Plaintiff having to through Union County's Human Resources office to have the bereavement day approved. *Id*. Plaintiff alleges that Mr. Nyerges would deny him time off but grant similar requests made by other employees. (Doc. 27, ¶ 20). Mr. Nyerges would question Plaintiff about the reason he was requesting to use sick leave and both Plaintiff and Union County's Human Resources office told Mr. Nyerges on several occasions he could not ask those types of questions. (Doc. 27, ¶¶ 21-22). Mr. Nyerges nevertheless continued to ask those types of questions and would become angry and look for ways to retaliate against Plaintiff when Plaintiff replied that it was none of his business. (Doc. 27, ¶ 23).

In 2019 and continuing thereafter, Mr. Nyerges began to tell Plaintiff he should retire and needed to retire. (Doc. 27, ¶ 46). Mr. Nyerges also told members of the public Plaintiff worked with that Plaintiff would be retiring soon. (Doc. 27, ¶ 47). Defendants were aware of this discriminatory conduct and failed to take prompt remedial action. (Doc. 27, ¶ 48).

On March 11, 2021, Mr. Nyerges asked to speak with Plaintiff to discuss Plaintiff's workload. (Doc. 27, ¶ 24). While the two initially spoke about the

workload, the conversation focused on National Pollutant Discharge Elimination System ("NPDES") permits that had been incorrectly processed by a former employee. (Doc. 27, ¶ 25). At the meeting, Mr. Nyerges told Plaintiff he needed to fix those improperly processed NPDES permits. (Doc. 27, ¶ 26). Mr. Nyerges's role as Conservation District Manager required him to sign all approved NPDES permits. (Doc. 27, ¶ 27). Mr. Nyerges signed all of the permits Plaintiff reviewed, but had not signed all the permits by the former employee. *Id*. Mr. Nyerges told Plaintiff that he wanted to retaliate against the former employee who had incorrectly processed the NPDES permits by reporting him to the Department of Environmental Protection. (Doc. 27, ¶ 28). Mr. Nyerges blamed Plaintiff for the improper processing of the permits, which Plaintiff responded to by stating that Mr. Nyerges was the one ultimately responsible because he was responsible for signing all the permits. (Doc. 27, ¶¶ 29-30).

A few days before that March 11, 2021 meeting, Plaintiff informed Conservation District Board Vice Chair Lucas Criswell that Mr. Nyerges was not properly processing and completing NPDES permits. (Doc. 27, ¶ 31). Plaintiff had also spoken with a Union County commissioner about receiving a raise or stipend while he was doing the work of two employees. (Doc. 27, ¶ 32). Plaintiff made these reports in good faith to appropriate individuals without malice or personal benefit.

(Doc. 27, ¶ 66). These reports would lead Defendants to retaliate against Plaintiff. (Doc. 27, ¶ 67).

Mr. Nyerges "was upset and irritated" that Plaintiff had spoken to the commissioner and board member about the improperly processed NPDES permits, which would ultimately lead to the March 30, 2021 events and Plaintiff's termination. (Doc. 27, ¶ 33). Mr. Nyerges retaliated against Plaintiff after finding out about the reports, including pretextual write ups and hostile treatment. (Doc. 27, ¶¶ 69-70).

On March 30, 2021, Mr. Nyerges "demanded" Plaintiff meet with him alone in "the map room." (Doc. 27, ¶ 34). Plaintiff had previously told the Chief Clerk that he did not feel safe alone with Mr. Nyerges and was told he did not have to meet with a department head alone if he felt it was unsafe. *Id*. Plaintiff told Mr. Nyerges he would not meet with Mr. Nyerges at that time. *Id*. In response, Mr. Nyerges began following Plaintiff around the office, demanding Plaintiff meet with him and eventually blocking Plaintiff's path so that Plaintiff could not leave. (Doc. 27, ¶ 35).

Plaintiff asked Mr. Nyerges to move several times but Mr. Nyerges refused. (Doc. 27, ¶ 36). Mr. Nyerges then "looked [Plaintiff] in the face and said 'go ahead and push me and see what happens.'" (Doc. 27, ¶ 36). Plaintiff responded by saying "you push me and see what happens." (Doc. 27, ¶ 37). Mr. Nyerges then claimed Plaintiff had threatened him and told Plaintiff he was calling the police. (Doc. 27, ¶

38). Plaintiff then agreed to leave the office. (Doc. 27, ¶ 39). Plaintiff alleges Mr. Nyerges's conduct towards Plaintiff at this meeting was "reprisal" from the March 11, 2021 meeting and Plaintiff's reports to the board member and commissioner. (Doc. 27, ¶ 76).

On April 8, 2021, Plaintiff received a letter from the Union County Commissioners informing him that as of April 8, 2021, his employment with UCCD and Union County had been terminated. (Doc. 27, ¶ 43; Doc. 27-2, p. 2). The letter stated Plaintiff was "terminated purportedly for insubordination." (Doc. 27, ¶ 43). At all times prior to his termination, Plaintiff was qualified and capable of doing his job. (Doc. 27, ¶ 44). Plaintiff was fifty-seven years old at the time of his termination. (Doc. 27, ¶ 45). After he was terminated, Plaintiff alleges Defendants gave Plaintiff's job duties and responsibilities to an individual substantially younger and/or less experienced than Plaintiff. (Doc. 27, ¶ 50).

On September 6, 2022, Defendants filed the instant motion to dismiss specific sections of Plaintiff's first amended complaint. (Doc. 29). In their motion to dismiss, Defendants move to strike certain portions of Plaintiff's prayers for relief. (Doc. 29, pp. 5-7). The Court construes those requests as a motion to strike pursuant to Federal Rule of Civil Procedure 12(f). A brief in support was filed on September 16, 2022. (Doc. 30). On September 29, 2022, a brief in opposition was filed. (Doc. 31). No reply brief was filed. Defendants' motion is ripe and ready for review.

## III.  LEGAL STANDARDS

Before proceeding to the merits of Defendant's motion, it is helpful to restate the legal standards relevant to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. We will also discuss the other legal standards relevant to this decision.

### A.  MOTIONS TO DISMISS UNDER RULE 12(B)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to seek dismissal for failure to state a claim upon which relief can be granted. To assess the sufficiency of a complaint when dismissal is sought under Rule 12(b)(6), a court should: (1) take note of the elements a plaintiff must plead to state a claim; (2) identify mere conclusions which are not entitled to the assumption of truth;  and (3) determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of a legal claim.[1]

In order for his or her allegations to be taken as true, a plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[2] To state a claim, a plaintiff must plead "enough facts to raise a reasonable expectation that

---

[1] *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).
[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

discovery will reveal evidence of the necessary element[s]."[3] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[4] Thus, courts "need not credit a claimant's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."[5] The court also need not assume that a plaintiff can prove facts that he or she has not alleged.[6] "To prevent dismissal, all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible."[7]

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8] The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.[9] This "presumption of truth attaches only to

---

[3] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556 (internal quotation marks omitted)).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

[6] *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

[7] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 1949).

[8] *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010).

[9] *Jordan v. Fox Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'"[10] The plausibility determination is context-specific and does not impose a heightened pleading requirement.[11]

In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.[12]

## B.   FEDERAL RULE OF CIVIL PROCEDURE 12(F) STANDARD (MOTION TO STRIKE)

Federal Rule of Civil Procedure 12(f) provides:

(f) Motion to Strike. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

(1) on its own; or

(2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Rule 12(f) works to reinforce the Federal Rule of Civil Procedure Rule 8 requirements that pleadings be "simple, concise, and direct."[13]

---

[10] *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted) (alternations in original).

[11] *Id.* at 347.

[12] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

[13] Fed. R. Civ. P. 8(d)(1); *Miller v. State Farm Mut. Auto Ins. Co.*, No. 1:20-CV-00367, 2020 WL 3265345, at *2 (M.D. Pa. June 17, 2020) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed. 2020 update)).

To that end, the purpose of any motion to strike should be to "clean up the pleadings, streamline litigation, and avoid the unnecessary forays into immaterial matters." *United States v. Educ. Mgmt. Corp.*, 871 F. Supp. 2d 433, 460 (W.D. Pa. 2012) (citation omitted).

Motions to strike should not be used to persuade a court to determine disputed questions of law. *See Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 218 (D.N.J. 1993) (citations omitted). They also "may not serve as an avenue to procure the dismissal of all or part of a complaint." *Davila v. N. Reg'l Joint Police Bd.*, 979 F. Supp. 2d 612, 624 (W.D. Pa. Oct. 21, 2013), *vacated in part on reconsideration*, 2014 U.S. Dist. LEXIS 102143 (W.D. Pa. July 28, 2014) (citing *Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F. Supp. 509, 530–31 (D.N.J. 2012)).

The burden rests with the moving party to show that the challenged matter should be stricken. *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 496 (W.D. Pa. 2019). Thus, the movant must demonstrate that the matter falls within one of the categories listed in Rule 12(f). "Immaterial" matter is that which "has no essential or important relationship to [any] claim[s] for relief." *Wagner v. Holtzapple*, 101 F. Supp. 3d 462, 488 (M.D. Pa. 2015) (citing *Del. Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279 (D. Del. 1995)). "Impertinent" matter consists of "statements that do not pertain, and are not necessary, to the issues in question." *Id.* (citation omitted). And "scandalous" matter is that which "casts a derogatory light on someone, uses repulsive language, 8 or detracts from the dignity of the court." *Id.* (citing *Carone v. Whalen, 121 F.R.D. 231, 232 (M.D. Pa. 1988))*.[14]

## C.   THE AGE DISCRIMINATION IN EMPLOYMENT ACT

The Age Discrimination in Employment Act ("ADEA") provides in pertinent part that "[i]t shall be unlawful for an employer . . . to discharge any individual or

---

[14] *Ashley v. Kosheba*, No. 1:22-CV-00982, 2023 WL 6200805, at * 3 (M.D. Pa. Sept. 22, 2023).

otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[15] Stating a claim for age discrimination under the ADEA requires a plaintiff to allege "(1) he is over forty, (2) he is qualified for the position in question, (3) he suffered from an adverse employment decision, and (4) his replacement was sufficiently younger to permit a reasonable inference of age discrimination."[16] "[A]t the motion to dismiss stage, the plaintiff's job is simple: allege enough facts to raise a reasonable expectation that discovery will reveal evidence of each ADEA element."[17]

"Punitive damages are not available under the ADEA."[18] The ADEA addresses the availability of liquidated damages "in 29 U.S.C. § 626(b) which specifically provides that liquidated damages shall be payable only in cases of willful violations."[19] "An ADEA violation is willful if the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by

---

[15] 29 U.S.C. § 623(a)(1).

[16] *Hill v. Borough of Kutztown*, 455 F.3d 225, 247 (3d Cir. 2006) (citing *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 463, 466 n.1 (3d Cir. 2005)).

[17] *Williams v. Wilkes Barre Hospital Co., LLC*, No. 3:22-CV-1151, 2023 WL 3671811, at *2 (M.D. Pa. May 25, 2023).

[18] *Andrews v. Williams WPC-I, LLC*, No. 4:19-CV-02200, 2020 WL 4015404, at *7 (M.D. Pa. July 16, 2020).

[19] *Bashore v. Pocono Mountain Reg'l Police Comm'n*, No. 3:18-CV-425, 2021 WL 3611113, at * 3 (M.D. Pa. Aug. 13, 2021) (internal quotation marks omitted)).

the ADEA."[20] The Supreme Court has rejected "any requirement of 'direct' evidence of discrimination, 'outrageous' conduct by the employer or proof that age was the predominant rather than a determinative factor in the employment decision."[21]

### D.   THE PENNSYLVANIA HUMAN RELATIONS ACT

The Pennsylvania Human Relations Act ("PHRA") provides in relevant part that under Pennsylvania law,

> [i]t shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification . . . [f]or any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap . . . of any individual or independent contractor . . . to discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.[22]

To state a claim for age discrimination under the PHRA a plaintiff must allege "he was over the age of 40; subject to an adverse employment action; qualified for his position; and that the adverse employment action was on account of his age."[23] At the motion to dismiss stage this requires Plaintiff to plead adequate facts that allow

---

[20] *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1099 (3d Cir. 1995) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 617 (1993)) (internal quotation marks omitted).

[21] *Starceski*, 54 F.3d at 1099 (citing *Hazen Paper Co.*, 507 U.S. at 617 (footnote omitted).

[22] 43 P.S. § 955(a).

[23] *Higgins v. MetLife Inc.*, No. 22-3714, 2023 WL 5309893, at * 9 (E.D. Pa. Aug. 17, 2023) (citing *Fowler v. AT&T, Inc.*, 19 F.4th 292, 299 (3d Cir. 2021)).

the court to reasonably expect discovery will reveal evidence of the elements.[24]
PHRA and ADEA claims are closely related and analyzed concurrently.[25]
"Resolution of [a] [p]laintiff's ADEA claim also resolves his PHRA claim."[26]

Punitive damages are not available under the PHRA.[27] Whether liquidated damages are punitive damages and therefore unavailable under the PHRA has not been conclusively decided in this Circuit.[28]

### E.   THE PENNSYLVANIA WHISTLEBLOWER LAW

The Pennsylvania Whistleblower Law ("PWBL") provides in relevant part:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.[29]

Under the PWBL, a good faith report is:

> A report of conduct defined in this act as wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true. An employer is not barred from taking disciplinary action against the

---

[24] *Phillips*, 515 F.3d at 234.

[25] *Keuch v. Teva Pharm. USA, Inc.*, No. 2:19-CV-05488-JMG, 2023 WL 5401565, at *13 n.5 (E.D. Pa. Aug. 22, 2023).

[26] *Id*.

[27] *Hoy v. Angelone*, 720 A.2d 745, 751 (Pa. 1998).

[28] *Doe v. Schuylkill Cnty. Courthouse*, No. 3:21-CV-477, 2022 WL 1424983, at *14 (M.D. Pa. May 5, 2022).

[29] 43 P.S. § 1423(a).

employee who completed the report if the employee's report was submitted in bad faith.[30]

The PWBL defines wrongdoing as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer."[31]

To state a PWBL claim, a plaintiff must allege that "prior to the alleged acts of retaliation, he had made a good faith report of wrongdoing to appropriate authorities."[32] "The plaintiff must also come forward with some evidence of a connection between the report of wrongdoing and the alleged retaliatory acts."[33]

The Third Circuit has instructed that "[t]o establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing."[34] Additionally, causation "can be inferred" through "other evidence gleaned from the record as a whole."[35] Nor is a

---

[30] 43 P.S. § 1422.

[31] *Id.*

[32] *O'Rourke v. Commonwealth*, 778 A.2d 1194, 1200 (2001) (citing 43 P.S. § 1424(b)).

[33] *Kimes v. Univ. of Scranton*, 126 F.Supp.3d 477, 504 (M.D. Pa. 2015) (quoting *O'Rourke*, 778 A.2d at 1200) (internal quotation marks omitted).

[34] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[35] *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000); *see also Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015).

plaintiff "limited to timing and demonstrative proof, such as actual antagonistic conduct or animus."[36]

With these legal standards and background of this case in mind we now turn to the analysis of Defendants' motion to dismiss.

## IV.   ANALYSIS

In their motion to dismiss, Defendants assert four arguments:

1.   Plaintiff's omnibus prayer for relief for compensatory damages should be stricken with respect to the ADEA claim because compensatory damages are not recoverable under the ADEA;

2.   Plaintiff's omnibus prayer for relief for liquidated damages should be stricken with respect to the ADEA claim because Plaintiff has not adequately averred the alleged ADEA violations were willful;

3.   Plaintiff's omnibus prayer for relief for liquidated damages should be stricken with respect to the PHRA claim because liquidated damages are not recoverable under the PHRA; and

4.   Count III of Plaintiff's amended complaint alleging violations of the PWBL should be dismissed for failure to state a claim upon which relief may be granted.

The Court will address each of these issues below in the order presented.

### A.   PLAINTIFF'S OMNIBUS PRAYER FOR RELIEF FOR COMPENSATORY DAMAGES WITH RESPECT TO THE ADEA WILL BE STRICKEN

In their motion to dismiss, Defendants move to strike Plaintiff's omnibus prayer for relief for compensatory damages with respect to the ADEA because the

---

[36] *Id.*

ADEA does not permit a separate recovery of compensatory damages. (Doc. 30, pp. 6-8). Plaintiff concedes the ADEA does not permit a separate recovery of compensatory damages. (Doc. 31, p. 11). Plaintiff's omnibus prayer for relief for compensatory damages with respect to the ADEA will therefore be stricken.

### B.   PLAINTIFF'S OMNIBUS PRAYER FOR RELIEF FOR LIQUIDATED DAMAGES WITH RESPECT TO THE ADEA WILL NOT BE STRICKEN

In their motion to dismiss, Defendants move to strike Plaintiff's omnibus prayer for relief for liquidated damages with respect to the ADEA because Plaintiff has failed to allege a willful violation of the ADEA. (Doc. 30, pp. 8-10). Defendants assert that "to find willfulness in a disparate treatment case, there must be 'some additional evidence of outrageous conduct' and not merely a finding that the employer knew or should have known that its conduct violated the ADEA." (Doc. 30, pp. 8-9). However, in *Hazen Paper Co. v. Biggins*, the Supreme Court reaffirmed "that the *Thurston* definition of 'willful'—that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute—applies to all disparate treatment cases under the ADEA. Once a 'willful' violation has been shown, the employee need not additionally demonstrate that the employer's conduct was outrageous . . . ."[37] Thus Defendants' argument that

---

[37] *Hazen Paper Co.*, 507 U.S. at 617. *See also Starceski*, 54 F.3d at 1099, 1099 n.10 (recognizing the Supreme Court rejected an outrageousness requirement in *Hazen Paper Co.*, effectively overruling the Third Circuit's decisions requiring a showing of outrageousness).

"Plaintiff has made no allegations of any conduct that would amount to the 'outrageous conduct' necessary to establish liquidated damages" is unavailing. (Doc. 30, p. 10).

Plaintiff argues that under the proper standard, his amended complaint alleges willful conduct warranting the imposition of liquidated damages. (Doc. 31, pp. 12-14). Plaintiff points to the allegations that during his thirty-two years of employment with the County his job performance consistently met or exceeded its standards, and that beginning in 2019 and continuing thereafter his newly hired supervisor began making age-related statements towards him directly and indirectly. (Doc. 31, p. 13). Plaintiff points specifically to his allegations that Mr. Nyerges told Plaintiff he should retire and that he needed to retire and that Mr. Nyerges told members of the public Plaintiff worked with that he was going to retire to support his allegations of willfulness. *Id*. Plaintiff alleges that as his supervisor, Mr. Nyerges was in a position of power over him and should have known that "making repeated, unwelcomed and unsupported age-related statements about an older employee reflects a systematic targeting of said employee with the goal of having them leave their job." (Doc. 31, pp. 13-14). Finally, Plaintiff alleges that at this stage of the litigation the Court does not have enough information to conclude Defendants did not act willfully. (Doc. 31, p. 14).

The Court agrees with Plaintiff. At this stage of the proceedings Plaintiff's amended complaint alleges sufficient facts to allow the Court to reasonably believe that discovery will reveal evidence that Defendants "knew or showed reckless disregard for the matter of whether its conduct was prohibited by" the ADEA.[38] Plaintiff alleges Mr. Nyerges told Plaintiff that he should retire, and needed to retire, and told members of the public Plaintiff would be retiring soon. (Doc. 27, ¶¶ 46-47). Plaintiff also alleges these age-related comments were made while Mr. Nyerges acted hostile towards Plaintiff. (Doc. 27, ¶¶ 17-39). Further, the Court agrees with Plaintiff that it does not have enough information to determine Defendants did not act willfully, and so dismissing the liquidated damages request at this stage would be premature. (Doc. 31, p. 14). The Court will thus decline to strike Plaintiff's claim for liquidated damages as related to the ADEA claim. Defendants may raise this issue again in a later stage of the proceedings if they wish.

### C.   PLAINTIFF'S OMNIBUS PRAYER FOR RELIEF FOR LIQUIDATED DAMAGES WITH RESPECT TO THE PHRA WILL NOT BE STRICKEN

Defendants move to strike Plaintiff's prayer for relief for liquidated damages with respect to the PHRA because liquidated damages are not available for violations of the PHRA. (Doc. 30, p. 10). Defendants' argument on this point is "sparse."[39]

> Under Count II of the Amended Complaint, Plaintiff requests liquidated damages for an alleged violation of the PHRA. (ECF 27, p. 13).

---

[38] *Hazen Paper Co.*, 507 U.S. at 617.

[39] *Doe v. Schuylkill Cnty. Courthouse*, 2022 WL 1424983, at *14.

> However, liquidated damages are not available for violations of the PHRA.

> Liquidated damages are intended to be punitive damages. *Potoski v. Wilkes University*, 2010 U.S. Dist. LEXIS 99731, 8-9 (M.D. Pa. 2010) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 (1985); *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1095 (3d Cir. 1995)). "Pennsylvania law clearly prohibits the imposition of punitive damages under the PHRA." *Id*. at 8 (citing *Hoy v. Angelone*, 720 A.2d 745, 751 (Pa. 1998); accord *Gagliardo v. Connaught Labs*, 311 F.3d 565, 570 n.3 (3d Cir. 2002)).

(Doc. 30, pp. 10-11). In response, Plaintiff argues that while  Defendants cite to *Hoy*[40] and *Potoski*[41] to support their argument that liquidated damages are unavailable under the PHRA, courts in this circuit have not reached a conclusion about whether liquidated damages are available under the PHRA. (Doc. 31, p. 16). Plaintiff points to *Doe v. Schuylkill County Courthouse* in support of his argument.[42] (Doc. 31, pp. 15-16). The Court agrees with the reasoning of Magistrate Judge Carlson in the *Doe* case:

> [T]he Pennsylvania Supreme Court has held that punitive damages are not available under the PHRA. See Hoy v. Angelone, 720 A.2d 745, 751 (1998); Tudor v. TBGHealth, Inc., 2022 WL 1004874, at *4 n.5 (M.D. Pa. April 2, 2022) (citing Hoy, 720 A.2d at 751; Klein v. Weidner, 729 F.3d 280, 288 (3d Cir. 2013) (granting summary judgment on the plaintiff's claim for punitive damages under the PHRA) . . . .

---

[40] *Hoy v. Angelone*, 720 A.2d 745, 751 (Pa. 1998).

[41] *Potoski v. Wilkes Univ.*, No. 3:06-CV-2057, 2010 WL 3811973, at *3 (M.D. Pa. Sept. 22, 2010).

[42] *Doe v. Schuylkill Cnty. Courthouse*, 2022 WL 1424983, at *14.

> [W]ith respect to the plaintiffs' claims for liquidated damages, we will deny the defendants' motion to dismiss. Courts in this circuit have differed in their conclusions regarding whether liquidated damages are permitted under the PHRA. Compare Potoski v. Wilkes Univ., 2010 WL 3811973 (M.D. Pa. Sept. 22, 2010) (liquidated damages not available under the PHRA) with Craig v. Thomas Jefferson University, 2009 WL 2038147, at *9 (E.D. Pa. July 7, 2009) (no caselaw establishing that liquidated damages are unavailable under the PHRA). As to this issue, the defendants' brief is sparse with respect to relevant caselaw in this area. Accordingly, given that the issue is not as clear-cut as the defendants suggest, we will decline to strike the plaintiffs' claim for liquidated damages at this juncture. See Bellas v. WVHCS Retention Co., 2012 WL 3961227, at *7 (M.D. Pa. Sept. 10, 2012) (declining to dismiss a liquidated damages demand at the motion to dismiss stage).[43]

Like in *Doe*, Defendants' briefing here is sparse and conclusory given the lack of clarity in this Circuit on this issue.[44] The Court will thus decline to strike Plaintiff's claim for liquidated damages as related to the PHRA claim. Defendants may raise this issue again in a later stage of the proceedings if they wish.

---

[43] *Doe v. Schuylkill Cnty. Courthouse*, 2022 WL 1424983, at *14. *See also Craig v. Thomas Jefferson University*, 2009 WL 2038147, at *9 (E.D. Pa. July 7, 2009) ("[T]he court is not aware of (and defendant does not cite to) any case law establishing that liquidated damages are excluded from the "any other legal or equitable relief" expressly authorized in the PHRA. Nor is the court aware of any case holding that liquidated damages *are* available under the PHRA. It is, perhaps, unlikely that the Pennsylvania legislature intended liquidated damages to be available under the PHRA. Still, given the PHRA's expansive remedial language, the lack of case law addressing the issue, and the dearth of briefing submitted by the parties on the issue—little by defendant-movant and none by plaintiff—the court will not, at this juncture, strike plaintiff's demand for liquidated damages as to his PHRA claim (Count II). Defendant may, of course, raise the issue again at a later stage of the proceedings, at which time the court would expect more robust briefing.").

[44] *Doe v. Schuylkill Cnty. Courthouse*, 2022 WL 1424983, at *14.

### D.   DEFENDANTS' MOTION TO DISMISS COUNT III – VIOLATION OF PWBL WILL BE DENIED

Defendants seek the dismissal of Count III of Plaintiff's amended complaint for failure to state a claim. (Doc. 30, pp. 11-14). Plaintiff argues that the law of the case doctrine applies to as this issue was already raised by Defendant UCCD and rejected by Judge Brann earlier in this case. (Doc. 31, pp. 17-23). The Court is persuaded that the law of the case doctrine applies, but only as to Defendant UCCD.

The amended complaint and the original complaint, in respect to Count III, are substantively the same and close to identical.[45] The differences include the insertion of a paragraph alleging UCCD is an employer under the PWBL and explaining why (Doc. 27, ¶ 61), a paragraph alleging Plaintiff made the reports about the improper processing of the permits in good faith (Doc. 27, ¶ 66), and the alteration of one paragraph. In the original complaint, Plaintiff alleges:

> 50. Mr. Nyerges found out that Mr. Ernst had reported the issue of the improper processing of NPDES permits to Lucas Criswell and a Union County commissioner. Mr. Nyerges was irritated and upset that Mr. Ernst did so.

---

[45] In Plaintiff's Motion for Leave to File First Amended Complaint, he indicates that a red-lined version of the amended complaint is attached as exhibit four. (Doc. 19, ¶ 18). However, a red-lined copy does not appear to be attached. Exhibit four is a one page certificate of concurrence. (Doc. 19-4, p. 1). Thus the Court has compared the original and amended complaint carefully by hand.

(Doc. 1, ¶ 50). In the amended complaint, in the corresponding paragraph,[46] Plaintiff alleges:

> 68. Mr. Nyerges retaliated against Mr. Ernst after finding out that he had reported the issue to his superiors.

(Doc. 27, ¶ 68). In the amended complaint, Plaintiff alleges that "Mr. Nyerges was irritated and upset" that he spoke to a "board member and county commissioner" in an earlier paragraph. (Doc. 27, ¶ 33).

As will be further discussed below, Defendant UCCD asserts almost identical substantive arguments to those made in the first motion to dismiss. Our decision must be guided by the law of the case principle.

"The [l]aw of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit."[47] Given that Plaintiff has plead substantively identical facts to his original complaint and that Defendant UCCD makes almost identical substantive arguments to those made in its first motion to dismiss, the Court believes Judge Brann's prior Opinion (Doc. 13) and Order (Doc. 14) on Defendant UCCD's first

---

[46] The paragraph numbering between the original and amended complaints varies due to the insertion of additional information both before Count III and in Count III as explained above.

[47] *United States v. Bogart*, No. 4:12-CV-347, 2014 WL 7507260, at *5 (M.D. Pa. Dec. 8, 2014) (quoting *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009)) (internal quotation marks omitted), *report and recommendation adopted*, No. 4:12-CV-00347, 2015 WL 136389 (M.D. Pa. Jan. 8, 2015).

motion to dismiss constitutes the law of the case as to Defendant UCCD.[48] To find otherwise would seem to allow Defendant UCCD to have a reconsideration on a matter previously decided during this lawsuit.[49] Moreover, to the extent the law of the case doctrine did not apply to this issue as to Defendant UCCD, the Court would nevertheless still deny Defendant UCCD's motion to dismiss Count III of the amended complaint and would adopt and apply Judge Brann's reasoning and analysis as its own in support of that determination, as discussed below.

The Court does not believe that the law of the case doctrine applies to Defendant Union County. The Third Circuit has explained,

> Between *Hamilton I* and the District Court's decision, Hamilton also amended the complaint to include additional defendants. We agree with the Seventh Circuit that "[t]he law of the case doctrine should not be read so rigidly that it precludes a party from raising an argument that it had no prior opportunity to raise." *United States v. Dexter,* 165 F.3d 1120, 1124 (7th Cir.1999) (quoting *Bagola v. Kindt,* 131 F.3d 632, 637 (7th Cir.1997)). The defendants added since *Hamilton I* lacked the opportunity to argue that they had not violated Hamilton's Eighth Amendment rights. On remand, they will have the opportunity to do so. We recognize, however, that the Hamilton I decision, though "not controlling, ... is highly persuasive authority for the issues it addressed." *Id.*[50]

Defendant Union County was added to this case in the amended complaint and has thus not yet had a chance to argue Plaintiff failed to state a claim. Therefore the

---

[48] Defendants make no argument that any of the exceptions to the law of the case doctrine apply to this case.

[49] *Bogart*, 2014 WL 7507260, at *5.

[50] *Hamilton v. Leavy*, 322 F.3d 776, 787 (3d Cir. 2003).

Court does not believe Judge Brann's prior determination is the law of the case with respect to Defendant Union County.[51]

i.   *Report of "Wrongdoing"*

Defendants assert that Plaintiff has failed to plead a legal basis for a PWBL claim because Plaintiff has not adequately alleged Mr. Nyerges's actions were 'wrongdoing.' (Doc. 30, p. 12). Defendants argue Plaintiff "failed to allege any state or federal statute or regulation that was violated and whether the alleged violation rose to a level greater than that of a merely technical or minimal nature." (Doc. 30, p. 12) (internal quotations and citations omitted). This is substantively the exact argument that was made in Defendant UCCD's motion to dismiss.[52]

In deciding Defendant UCCD's first motion to dismiss, Judge Brann held Plaintiff had adequately alleged "wrongdoing" under the PWBL, explaining:

---

[51] *See Clarity Sports Int'l LLC. v. Redland Sports*, No. 1:19-CV-00305, 2021 WL 11108157, at *9 (M.D. Pa. Mar. 4, 2021), *report and recommendation adopted*, *Clarity Sports Int'l LLC et al v. Redland Sports et al.*, No. 1:19-CV-00305-YK, Doc. 226 (M.D. Pa. Apr. 12, 2021).

[52] Defendants' brief in support of this motion to dismiss reads, "In the present case, Plaintiff has failed to plead the legal basis for a PWBL claim. Plaintiff has alleged that the actions of Mr. Nyerges were considered 'wrongdoing' as defined by the PWBL. Specifically, Plaintiff alleges that Mr. Nyerges improperly processed NPDES permits (ECF 27 ¶ 63). However, Plaintiff failed to allege any state or federal statute or regulation that was violated and whether the alleged violation rose to a level greater than that of a 'merely technical or minimal nature.' (ECF 27 ¶¶ 26-30)." (Doc. 30, p. 12).

The argument in the brief in support for the first motion to dismiss by Defendant UCCD reads, "In the present case, Plaintiff has failed to plead the legal basis for a claim. Plaintiff has alleged that the actions of Mr. Nyerges were

[A]t the motion to dismiss phase, plaintiffs are "not required to cite to a specific statute, code or regulation in order to state claim under the Whistleblower Law."[53] At this early stage, the claim survives so long as "the facts alleged . . . suggest that [the] Defendants' actions were violative of a code of conduct or ethics," or other law or regulation.[54]

Here, Ernst alleges that certain NPDES permits, which "Nyerges was required to sign" prior to approval, "had not been processed correctly by a former employee," and that he informed a Conservation District board member and Union County commissioner that "Nyerges was not properly processing and completing the NPDES permits."[55] The Complaint contains no detail on which Federal or State statute or regulation Nyerges and the Conservation District purportedly violated by improperly processing and approving the NPDES permits.[56] But in his Opposition, Ernst asserts that the Pennsylvania Department of Environmental Protection "has the statutory authority to 'take appropriate action on all permit applications,'"[57] and that consistent with 25 Pa. Code §§ 102.31 and 102.41, the Department delegated the authority over NPDES permit applications in Union County to the Conservation District.[58] According to Ernst, he "raised wrongdoing

---

considered 'wrongdoing' as defined by the PWBL. (ECF 1 ¶¶ 45, 47-50). However, Plaintiff failed to allege any state or federal statute or regulation that was violated and whether the alleged violation rose to a level greater than that of a 'merely technical or minimal nature.' Plaintiff claims to know a great deal about the NPDES permits that he alleges were improperly processed, but he fails to cite the state or federal statute or regulation concerning how to process NPDES permits. (ECF 1 ¶¶ 20-22, 47). In addition, Plaintiff does not allege how the alleged improper processing of the NPDES permits rises to a level above a merely technical or minimal infraction. (ECF 1 ¶¶ 20-22, 47)." (Doc. 10, pp. 6-7).

[53] *Beaumont v. Allegheny Cnty. Emergency Serv*, 2021 WL 1948357, at *9 (W.D. Pa. Mar. 9, 2021), *report and recommendation adopted*, 2021 WL 1946659 (W.D. Pa. May 14, 2021).

[54] *Bielewicz v. Penn-Trafford Sch. Dist.*, No. 10-1176, 2011 WL 1486017, at *5 (W.D. Pa. Feb. 9, 2011) (internal quotation marks omitted), *report and recommendation adopted*, 2011 WL 1399839 (W.D. Pa. Apr. 13, 2011).

[55] Doc. 1 ¶¶ 20, 22, 26–27.

[56] *See id*. ¶¶ 8–62.

[57] Doc. 11 at 6 (quoting 42 Pa. Stat. § 1423(a)).

[58] *Id*. at 6–7.

within this framework."[59]

Ernst's Complaint and Opposition leave many questions unanswered. Although Ernst endeavors in his Opposition to outline the legal basis for the violations he reported, he does not identify any statutory or regulatory provision that "specifically define[s] some prohibited conduct" regarding the processing of NPDES permits.[60] Moving forward, this omission, if left unaddressed, will prove fatal.[61] But at this stage, the absence of this information does not necessitate dismissal.[62] Ernst's allegations about reporting Nyerges's approval of improperly processed permits "suggest that [Nyerges's] actions were violative of a [Federal or State law or regulation]."[63] Accordingly, Ernst adequately

---

[59] *Id*. at 7.

[60] *Sukenik*, 131 A.3d at 556.

[61] *Id*.; *see also Allen v. City of Philadelphia*, No. 1253 C.D. 2017, 2019 WL 1528538, at *5–6 (Pa. Commw. Ct. Apr. 9, 2019) (holding that "the trial court committed an error of law by concluding that [the plaintiff's] report constitute a good faith report of waste" because at trial, the plaintiff did not "connect [the alleged wrongful conduct he reported] with some type of specific violation that would satisfy the definition of 'wrongdoing'"); *Schellbach v. Colonial Intermediate Unit #20*, 2017 WL 4542372, *5 (Pa. Commw. Ct. Oct. 12, 2017) (affirming trial court's order granting summary judgment because the plaintiff "has not identified any statutory provision or applicable regulation that specifically prohibits the complained-of conduct," and, therefore, "the trial court properly concluded that [the plaintiff] has not alleged the 'wrongdoing' necessary to state a claim under the Whistleblower Law").

[62] *Compare Beaumont*, 2021 WL 1948357 at *9 (denying a motion to dismiss a claim under the Whistleblower Law based on the plaintiff's allegation that she suffered a retaliatory firing after reporting that her coworker, a 9-1-1 operator, was "sleeping on the job" even though the plaintiff did not "cite to a specific statute, code or regulation" that this conduct allegedly violated), *with Gray v. Hafer*, 651 A.2d 221, 223–24 (Pa. Commwlth. 1994) (dismissing without prejudice plaintiff's claim under the Whistleblower Law because the plaintiff alleges only that he "filed a good-faith report . . . that identified and documented instances of wrongdoing and/or waste"; the plaintiff did not detail what the alleged "instances of wrongdoing and/or waste" were, leaving the court unable to determine whether these instances were "violation[s] of [a] statute" the purported wrongdoer was "charged to enforce for the benefit of the public" or "unrelated to [any] statutory or regulatory duties").

[63] *Bielewicz*, 2011 WL 1486017 at *5.

alleges "wrongdoing" under the Whistleblower Law.

(Doc. 13, pp. 8-10) (footnotes 52-62 in original). As explained above, the Court believes Judge Brann's prior Opinion (Doc. 13) and Order (Doc. 14) on the first motion to dismiss constitutes the law of the case as to Defendant UCCD. Thus, Defendant UCCD's motion to dismiss Count III of Plaintiff's amended complaint on the ground Plaintiff failed to plead wrongdoing will be denied.[64]

As to Defendant Union County, it asserts a substantively identical argument as that made by Defendant UCCD in its first motion to dismiss on this ground and shares Defendants UCCD's arguments in this motion to dismiss.[65] The Court finds

---

[64] Again, to the extent the law of the case does not apply to Defendant UCCD, as the Court does below in deciding the motion to dismiss as to Defendant Union County, the Court would apply Judge Brann's reasoning and analysis to deny Defendant UCCD's motion to dismiss Count III of the amended complaint on this ground.

[65] The Court acknowledges that Plaintiff's brief in opposition to this motion to dismiss does not, aside from the quoting of Judge Brann's Opinion, assert the Pennsylvania Department of Environmental Protection has statutory authority to act on permit applications and delegate that authority to Defendant UCCD or outline the legal basis for the violations he reported as he asserted in his brief in opposition to Defendant UCCD's first motion to dismiss. However, the Court does not believe this changes the result for Defendant Union County. A plaintiff cannot amend their complaint and plead new facts in a brief in opposition to a motion to dismiss. *Reed v. Chambersburg Area Sch. Dist.*, 951 F. Supp. 2d 706, 720 (M.D. Pa. 2013), *Davis v. Portfolio Recovery Associates, LLC.*, No. CV 21-166, 2022 WL 138046, at *4 (W.D. Pa. Jan. 14, 2022). Further, the fact remains that this claim survives as long as Plaintiff's alleged facts suggest Defendants' actions violated a code of conduct, ethics, or other law or regulation. *Bielewicz*, 2011 WL 1486017, at *5. The Court finds Plaintiff has by alleging the permits were improperly processed, that Mr. Nyerges was not properly processing the permits he was required to sign prior to approval, that he informed a board member and County commissioner that the

Judge Brann's Opinion to be "highly persuasive authority" on the issue of whether Plaintiff adequately alleged wrongdoing.[66] The Court agrees with Judge Brann's analysis quoted above and will apply that same reasoning to deny Defendant Union County's motion to dismiss Count III of Plaintiff's amended complaint on the ground Plaintiff failed to plead wrongdoing.

　　ii.　　*Causation*

　　Defendants also assert that Plaintiff has failed to state a PWBL claim because he fails to show evidence of a causal connection between the alleged reports he made and the alleged act of retaliation. (Doc. 30, pp. 12-14). Defendants make two arguments in support of this assertion, one of which is substantively the same as the argument made by Defendant UCCD in its first motion to dismiss and the other of which was not explicitly made by Defendant UCCD in its first motion to dismiss. (Doc. 30, pp. 12-14; Doc. 10, pp. 7-8).

　　Defendants' first argument was not explicitly or directly articulated in Defendant UCCD's first motion to dismiss. Defendants argue that Plaintiff "makes only a bald assertion that Mr. Nyerges was aware" that Plaintiff had spoken with the board member and commissioner. (Doc. 30, p. 12). Defendants assert that Plaintiff

---

permits were not being properly processed by Mr. Nyerges, and that Mr. Nyerges wanted to report the former employee to the Department of Environmental Protection for their improper processing of the permits. (Doc. 27, ¶¶ 25-28, 30-32).

[66] *Hamilton*, 322 F.3d at 787.

does not make any allegations indicating Mr. Nyerges was aware of those conversations and that "Plaintiff's allegations simply provide a formulaic recitation of the elements of PWBL cause of the action." (Doc. 30, p. 13). Defendants cite to Plaintiff's amended complaint, alleging he "simply states that 'Mr. Nyerges retaliated against Mr. Ernst after finding out that he had reported the issue to his superiors.'" *Id.*

Defendants then correctly note that under *Twombly*, a plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ."[67] Defendants would have the Court conclude that because there are no allegations sufficiently supporting Mr. Nyerges awareness of the alleged report of wrongdoing, there can be no causal connection between the reports and Plaintiff's termination. (Doc. 30, p. 13).

However, as discussed above in Section III(D), "[t]o establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing."[68] Because a plaintiff can establish causation through temporal proximity coupled with a pattern of

---

[67] *Twombly*, 550 U.S. at 555.
[68] *Lauren W. ex rel. Jean W.*, 480 F.3d at 267.

antagonism, the Court rejects Defendant's argument on this point. As Judge Brann

found,

> The Third Circuit instructs that "[t]o establish the requisite causal
> connection a plaintiff usually must prove either (1) an unusually
> suggestive temporal proximity between the protected activity and the
> allegedly retaliatory action, or (2) a pattern of antagonism coupled with
> timing."[69] That said, causation "can be inferred" by "other evidence
> gleaned from the record as a whole"; plaintiffs are "not limited to
> timing and demonstrative proof, such as actual antagonistic conduct or
> animus."[70]
>
> Here, Ernst alleges that he reported Nyerges's failure to properly
> process and complete the NPDES permits "[o]nly a few days before
> [his] March 11, 2021, meeting" with Nyerges, and then Nyerges fired
> him on April 8, 2021— approximately four weeks later.[71] The temporal
> proximity of these actions may well be insufficient, by itself, to
> establish causation.[72] But Ernst does not predicate his argument for

---

[69] *Id.*

[70] *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000); *see also Daniels v. School District of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015) (holding that "a plaintiff may rely on the temporal proximity between [the protected activity and employer's adverse action] if 'unusually suggestive,'" but "[i]n the absence of such a close temporal proximity, [courts] consider the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action").

[71] Doc. 1 ¶¶ 26–28.

[72] *See Williams v. Phila. Housing Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (explaining that although "two days between the protected activity engaged in and the alleged retaliation" as well as "comments made by a supervisor suggesting retaliation ten days before termination, along with other evidence of retaliation," have been held sufficient to "support a causal connection," two months between the protected activity and adverse action are not "so close as to be unduly suggestive") (citing *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003)), superseded by statute on other grounds as stated in *Robinson v. First State Community Action Agency*, 920 F.3d 182, 187–89 & n.30 (3d Cir. 2019).

causation solely on temporal proximity.[73] Indeed, as Ernst asserts, the Complaint includes a collection of additional allegations relevant to this inquiry:

- When Ernst informed Nyerges that the permits, which Nyerges was required to sign, were not processed properly, Nyerges blamed Ernst and the Conservation District employee who processed the permits and wanted to retaliate against the other employee by reporting him to the Department of Environmental Protection.[74]

- Nyerges was "upset and irritated" when he learned that Ernst reported the improper permit processing to a Conservation District board member and County commissioner.[75]

- Nyerges issued Ernst "pre-textual write ups and hostile treatment": On March 30, 2021, Nyerges followed Ernst around the office demanding to meet with him, and, when Ernst refused, physically blocked Ernst's path and then challenged Ernst to "push [him] and see what happens."[76]

Taken together, the relatively close temporal proximity and the additional allegations of antagonism and animus "raise a reasonable expectation that discovery will reveal evidence" of a causal link between Ernst's report of wrongdoing and termination.[77]

(Doc. 13, pp. 11-12).

---

[73] Doc. 11 at 11 ("Ernst has timing plus other supporting facts.").

[74] Doc. 1 ¶¶ 20–25.

[75] *Id.* ¶ 28.

[76] *Id.* ¶¶ 52–56.

[77] *Connelly*, 809 F.3d at 789; *see also Farrell*, 206 F.3d at 280–86 (holding that timing of four weeks between protected conduct and retaliation coupled with evidence of animus and inconsistencies in the employer's stated rationale for the plaintiff's termination was "sufficient to establish [a] causal link").

The Court agrees with Judge Brann and applies his analysis to this motion to dismiss. As Plaintiff has adequately plead a causal connection in a fashion approved of by the Third Circuit, the Court rejects Defendants argument that because there are not sufficient allegations to support Mr. Nyerges was aware of the reports of wrongdoing there can be no causal connection between the reports and Plaintiff's termination. (Doc. 30, pp. 12-13). The Court will thus deny Defendants motion to dismiss Count III of Plaintiff's amended complaint on this ground.

Defendants' second argument regarding causal connection is that "Plaintiff alleges facts and provides the termination letter that support that he was terminated for insubordination which is an additional reason why there is no causal connection between the alleged reports he made and his termination." (Doc. 30, p. 14). This argument is substantively identical to Defendant UCCD's argument in its first motion to dismiss.[78]

---

[78] Defendants argument in their brief in support to this motion to dismiss reads, "In addition, Plaintiff's allegations specifically indicate that he was insubordinate to his supervisor, Mr. Nyerges. (ECF 27 ¶ 70). Plaintiff alleges Mr. Nyerges requested a meeting with Plaintiff but that Plaintiff refused to meet with Mr. Nyerges alone. (ECF 27 ¶ 70). Plaintiff further alleges that he was given authority by the Chief Clerk to refuse to meet with a department head alone if he did not feel safe. (ECF 27 ¶ 70). Rather than request time to ask for another individual to attend the meeting with him, Plaintiff instead 'told Mr. Nyerges that he was not going to meet with him at that time.' ECF 27 ¶ 70). Further, Plaintiff does not allege that he attempted to set a future time and date to meet with Mr. Nyerges pursuant to his request. Plaintiff's Exhibit B is a copy of his termination letter that specifically states that he was being terminated for insubordination and provides a summary of the acts for which he was terminated. (ECF 27-2, Exhibit B). Ultimately, Plaintiff

In deciding Defendant UCCD's first motion to dismiss, Judge Brann rejected

this argument, explaining:

> Separately, the Conservation District argues the Complaint and
> attached termination letter show that Ernst "was insubordinate with
> respect to [Nyerges's] requests for a meeting" and "terminated for [his]
> insubordination."[79] But on this, the Conservation District jumps the

_____

alleges facts and provides the termination letter that support that he was terminated
for insubordination which is an additional reason why there is no causal connection
between the alleged report he made and his termination. Plaintiff fails to allege
anything other than unsupported conclusions and unwanted inferences which the
Court does not have to accept with respect to the alleged wrongdoing and any causal
connection between the Plaintiff's alleged report and the alleged act of retaliation."
(Doc. 30, pp. 13-14) (footnote omitted).

In its brief in support of its first motion to dismiss, Defendant UCCD argued,
"Further, Plaintiff failed to show evidence of a causal connection between the report
he made and the alleged act of retaliation. In fact, Plaintiff's allegations specifically
indicate that he was insubordinate with respect to Mr. Nyerges's requests for a
meeting. (ECF 1 ¶ 53). Plaintiff alleges Mr. Nyerges requested a meeting with
Plaintiff but that Plaintiff refused to meet with Mr. Nyerges alone. (ECF 1 ¶ 53).
Plaintiff further alleges that he was given authority by the Chief Clerk to refuse to
meet with a department head alone if he did not feel safe.1 (ECF 1 ¶ 53). Rather than
request time to ask for another individual to attend the meeting with him, Plaintiff
instead 'told Mr. Nyerges that he was not going to meet with him at that time.'"
(ECF 1 ¶ 53). Further, Plaintiff does not allege that he attempted to set a future time
and date to meet with Mr. Nyerges pursuant to his request. Plaintiff, in the following
paragraphs, alleges the insubordinate behavior of Plaintiff that continued after his
initial act of insubordination. (ECF 1 ¶¶ 54-58). Plaintiff's Exhibit A is a copy of his
termination letter that specifically states that he was being terminated for
insubordination and provides a summary of the acts for which he was terminated.
(ECF 1-1, Exhibit A). Ultimately, Plaintiff alleges facts that support that he was
terminated for insubordination so that there is no causal connection between the
report he made and his termination. Plaintiff fails to allege anything other than
unsupported conclusions and unwanted inferences which the Court does not have to
accept with respect to the alleged wrongdoing and any causal connection between
the report made and the alleged act of retaliation." (Doc. 10, pp. 7-8) (footnote
omitted).

[79] Doc. 10 at 7.

gun. As explained, questions regarding legitimate, non-discriminatory rationales versus pretext—that is, the *McDonnell Douglas* burden shifting analysis—are reserved for summary judgment.[80] After the parties develop the factual record through discovery, the Conservation District will have the opportunity to offer a legitimate, non-discriminatory justification for firing Ernst. But that's not the question here. At the pleadings stage, Ernst needs only to allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements."[81] Ernst has met this burden.

(Doc. 10, pp. 12-13). Again, the Court believes Judge Brann's prior Opinion (Doc. 13) and Order (Doc. 14) on the first motion to dismiss constitutes the law of the case as to Defendant UCCD. The Court therefore will deny Defendant UCCD's motion to dismiss Count III of Plaintiff's amended complaint on this ground.[82]

As to Defendant Union County, it asserts a substantively identical argument as that made by Defendant UCCD in its first motion to dismiss on this ground and shares Defendants UCCD's arguments in this motion to dismiss. The Court finds Judge Brann's Opinion to be "highly persuasive authority" on the issue of whether Plaintiff adequately plead a causal connection.[83] The Court agrees with Judge Brann's analysis quoted above and will apply that same reasoning to deny Defendant

---

[80] *Connelly*, 809 F.3d at 789.

[81] *Id*. (internal quotation marks omitted).

[82] Again, to the extent the law of the case did not apply to Defendant UCCD, as the Court does below in deciding the motion to dismiss as to Defendant Union County, the Court would apply Judge Brann's reasoning and analysis to deny Defendant UCCD's motion to dismiss Count III of the amended complaint on this ground.

[83] *Hamilton*, 322 F.3d at 787.

Union County's motion to dismiss Count III of Plaintiff's amended complaint on this ground.

In sum, the Court will deny Defendants' motion to dismiss Count III of Plaintiff's amended complaint.

## V.      CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss (Doc. 29) will be GRANTED in part and DENIED in part as follows:

(1)      Defendants' motion to dismiss (Doc. 29) will be GRANTED insofar as it seeks to have Plaintiff's omnibus prayer for relief for compensatory damages with respect to the ADEA be stricken and Plaintiff's prayer for compensatory damages under the ADEA will be STRICKEN.

(2)      Defendants' motion to dismiss (Doc. 29) will be DENIED insofar as it seeks to have Plaintiff's omnibus prayer for relief for liquidated damages with respect to the ADEA stricken.

(3)      Defendants' motion to dismiss (Doc. 29) will be DENIED insofar as it seeks to have Plaintiff's omnibus prayer for relief for liquidated damages with respect to the PHRA stricken.

(4)      Defendants' motion to dismiss (Doc. 29) will be DENIED insofar as it seeks dismissal of Count III of Plaintiff's amended complaint.

(5)      An appropriate order will be issued.

Date: September 26, 2023                BY THE COURT

                                        *s/William I. Arbuckle*
                                        William I. Arbuckle
                                        U.S. Magistrate Judge